1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JIUJIANG XIANGMOJIN TRADING CO
LTD, et al.,

                           Plaintiffs,

      v.

INTERLINK PRODUCTS
INTERNATIONAL INC, et al.,

                       Defendants.

CASE NO. 2:24-cv-02034-LK

ORDER GRANTING
DEFENDANTS' MOTION TO
TRANSFER

This matter comes before the Court on Defendants' Motion to Transfer or, in the Alternative, to Dismiss for Lack of Personal Jurisdiction and Improper Venue. Dkt. No. 13. For the reasons set forth below, the Court grants the motion to transfer and denies as moot the alternative request to dismiss.

## I.   BACKGROUND

Plaintiffs Jiujiang Xiangmojin Trading Co. Ltd., Dongguan Weihuanya Trading Co. Ltd., Li Ling, Hui'an Mubing E-commerce Co. Ltd., Yongzhou Qianliren Technology Co. Ltd., Xiantao Wensheng Technology Co. Ltd., Yongzhou Lengshuitan District Shanqu Trading Co. Ltd., and

Aqua Home Product Inc. are Amazon sellers who market and sell showerheads on Amazon and on their independent websites. Dkt. No. 1 at 5. After Defendant Interlink Products International, Inc. submitted an infringement complaint through Amazon's Patent Evaluation Express Program ("APEX Program")[1] in November 2024, Plaintiffs sued Interlink and Eli Zhadanov, the inventor of the allegedly infringed patent—U.S. Patent No. 11,992,850 ("the '850 Patent")—for declaratory judgment that the products listed in Interlink's infringement complaint do not infringe the '850 Patent. *Id.* at 2, 5, 9–15.[2]

On July 11, 2025, Defendants moved to transfer this action to the United States District Court for the Eastern District of New York or, in the alternative, to dismiss the complaint for lack of personal jurisdiction and/or improper venue. *See* Dkt. No. 13 at 2.

## II.    DISCUSSION

### A.    Legal Standard

For the convenience of parties and witnesses, and in the interest of justice, a district court has discretion to "transfer any civil action to any other district or division where it might have been brought[.]" 28 U.S.C. § 1404(a). "Venue in a declaratory judgment action for patent

---

[1] The APEX Program is a dispute resolution mechanism whereby patent owners and Amazon sellers can agree to a neutral third-party evaluation of whether accused products likely infringe utility patents. *See* Dkt. No. 14 at 3–4; Dkt. No. 2 at 40–44. To initiate dispute resolution under the APEX Program, a patent owner or authorized representative thereof executes Amazon's Patent Evaluation Express Agreement ("APEX Agreement"), including an exhibit describing the allegedly infringing products, and submits it to Amazon. Dkt. No. 2 at 25, 40. Once signed by the party alleging infringement, Amazon forwards the APEX Agreement to the seller of the accused products. The seller then has the option of accepting the dispute resolution offer by executing the APEX Agreement, declining to participate, or doing nothing. *Id.* at 28. If both the complainant and seller execute the APEX Agreement, they are the only parties thereto; they waive any claims against Amazon or the evaluator. *Id.* at 24. Each side pays $4,000 for the evaluation. *Id.* at 40. If the evaluator finds that the complainant "is likely to prove that all Accused Products infringe" the asserted claim, the complainant's $4,000 fee will be refunded, and Amazon will remove the accused product from its platform. *Id.* at 43. If the evaluator finds that the complainant "is not likely to prove that any Accused Product infringes" the asserted claim, the seller's $4,000 fee will be refunded, and its products will remain on Amazon. *Id.* "There is no process for reconsideration of the Evaluator's decision, though either side may appeal to Amazon by providing a court order that conflicts with the Evaluator's decision concerning invalidity or infringement." *Id.* at 42–43. If the seller declines to participate in the APEX Program or does nothing, Amazon will remove the accused products from its platform unless the seller files an action for declaratory judgment of non-infringement of the asserted patent in court, in which case Amazon will permit the items to remain on its platform "while the lawsuit proceeds." *Id.* at 28, 40.

[2] Interlink is the exclusive, albeit limited, licensee of the '850 Patent. Dkt. No. 15 at 2.

ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER - 2

1   noninfringement and invalidity is governed by the general venue statute, 28 U.S.C. § 1391(b) and

2   (c), and not the special patent infringement venue statute, 28 U.S.C. § 1400(b)." *U.S. Aluminum*

3   *Corp. v. Kawneer Co.*, 694 F.2d 193, 195 (9th Cir. 1982).

4          District courts typically weigh the following factors when determining whether transfer is

5   appropriate under Section 1404(a):

6          (1) [T]he location where the relevant agreements were negotiated and executed,
       (2) the state that is most familiar with the governing law, (3) the plaintiff's choice
7       of forum, (4) the respective parties' contacts with the forum, (5) the contacts
       relating to the plaintiff's cause of action in the chosen forum, (6) the differences in
8       the costs of litigation in the two forums, (7) the availability of compulsory process
       to compel attendance of unwilling non-party witnesses . . . (8) the ease of access to
9       sources of proof[, and (9)] the relevant public policy of the forum state[.]

10  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498–99 (9th Cir. 2000). "The party moving for

11  transfer of a case bears the burden of demonstrating transfer is appropriate." *Cirafici v. City of*

12  *Ithaca*, 968 F.2d 1220 (9th Cir. 1992). A court does not need to have personal jurisdiction over a

13  defendant in order to reach the merits of its motion to transfer. *Goldlawr, Inc. v. Heiman*, 369 U.S.

14  463, 466 (1962).

15  **B.     The Relevant Factors Favor Transfer Here**

16         1.   <u>Location where the relevant agreements were negotiated and executed</u>

17         Defendants argue that this factor is inapplicable. Dkt. No. 13 at 8. Plaintiffs contend that

18  their claims "arise directly out of Defendants' execution and submission of [the APEX] agreement,

19  which might trigger the removal of Plaintiffs' product listings[.]" Dkt. No. 19 at 9. In addition,

20  Plaintiffs argue that "Defendants' agreement to litigate matters arising from the APEX Program in

21  King County supports keeping the case in this District[.]" *Id.* at 10. Plaintiffs point to Section 5 of

22  the Agreement, which states that "Participants"—defined as the patent owner or authorized

23  representative thereof and the seller—"agree[] to the jurisdiction and venue of the federal and state

24  courts located in King County, Seattle, Washington." Dkt. No. 2 at 24.

1    Although Plaintiffs argue that their decision not to sign the APEX agreement is immaterial,

2    Dkt. No. 19 at 9, it is black letter law that "for a contract to form, the parties must objectively

3    manifest their mutual assent." *Keystone Land & Dev. Co. v. Xerox Corp.*, 94 P.3d 945, 949 (Wash.

4    2004). No Plaintiff signed the agreement, nor did Zhadanov.[3] That Interlink was willing to litigate

5    disputes arising from the APEX Agreement in King County *if* Plaintiffs agreed to its alternative

6    dispute resolution offer does not make the APEX Agreement relevant here. As Defendants point

7    out, Dkt. No. 20 at 5, Plaintiffs' only claim against them is one for declaratory judgment that

8    Plaintiffs' products do not infringe the '850 Patent. That claim has nothing to do with the

9    unexecuted APEX Agreement.

10    Because there are no relevant agreements in this case, this factor is inapplicable.

11    2.    The state that is most familiar with the governing law

12    Because the sole claim in this matter is a federal claim, this factor is inapplicable. *See, e.g.*,

13    *Universal Stabilization Techs., Inc. v. Advanced Bionutrition Corp.*, No. 17CV87-GPC(MDD),

14    2017 WL 1838955, at *9 (S.D. Cal. May 8, 2017) ("[N]either state is most familiar with the

15    governing law since it falls under the U.S. patent laws."); *Intel Corp. v. Commonwealth Sci. &*

16    *Indus. Rsch. Organisation*, No. C05-01886 MJJ, 2006 WL 8446507, at *5 n.2 (N.D. Cal. Dec. 11,

17    2006) ("[B]ecause the instant cases involve federal patent law, this Court and the District Court

18    for the Eastern District of Texas are equally familiar with the controlling law.").

19    3.    Plaintiffs' choice of forum

20    As Defendants note, Dkt. No. 13 at 8, although the court generally affords the plaintiff's

---

[3] In support of their arguments that this Court has personal jurisdiction over Zhadanov, Plaintiffs contend that he "had to authorize any enforcement action, including the APEX Program"; thus, "[t]he initiation of the APEX process necessarily implies action by Mr. Zhanadov himself." Dkt. No. 19 at 5–6. In support of their arguments that the Eastern District of New York is not an appropriate venue, Plaintiffs aver that Zhadanov "is *not* the party who executed the APEX Agreement and thus is not the party responsible for the acts giving rise to this litigation." *Id.* at 8–9 (emphasis added). Plaintiffs cannot have it both ways. But even assuming that Zhanadov effectively executed the APEX Agreement, it does not change the result here.

1   choice of forum great weight, *Lou v. Belzberg*, 834 F.2d 730, 739 (9th Cir. 1987), that choice is

2   entitled to significantly less deference when—as here—that forum is not the plaintiff's home

3   forum, *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007) (explaining

4   that the assumption that the chosen forum is appropriate is less reasonable in such cases). Plaintiffs

5   Jiujiang Xiangmojin Trading Co. Ltd., Dongguan Weihuanya Trading Co. Ltd., Li Ling, Hui'an

6   Mubing E-commerce Co. Ltd., Yongzhou Qianliren Technology Co. Ltd., Xiantao Wensheng

7   Technology Co. Ltd., and Yongzhou Lengshuitan District Shanqu Trading Co. Ltd. are located in

8   China. Dkt. No. 1 at 2–3.[4] Plaintiff Aqua Home is located in Flushing, New York. *Id.* at 4.

9   Furthermore, "[i]n patent infringement actions, the plaintiff's choice is accorded little deference

10   even where a plaintiff has chosen a forum close to his place of residence if the center of the accused

11   activity is outside the chosen forum." *Zinus, Inc. v. Classic Brands, LLC*, No. CV 19-5455 PSG

12   (EX), 2019 WL 8226076, at *6 (C.D. Cal. Oct. 3, 2019) (citation modified). Because the scope of

13   the allegedly infringing activity in this case is nationwide, and the development of the accused

14   products appears to have occurred overseas, *see* Dkt. No. 1 at 2–3, the gravitational center of the

15   relevant activity in this case is in the Eastern District of New York, where one Plaintiff is

16   headquartered, *id.* at 4, and where the inventor of the '850 Patent resides, conceived of the

17   invention, and possesses relevant documentation regarding the invention, Dkt. No. 15 at 3–4. Thus,

18   the Court accords little weight to Plaintiffs' choice of forum.

19        4.  <u>The parties' contacts with the forum</u>

20        As noted above, this District is not Plaintiffs' home forum. Nor is it Defendants':

21

22   ―――――――――――
[4] The Court does not consider these Plaintiffs' residence in ruling on the motion to transfer venue. *See* 28 U.S.C. §

23   1391(c)(3) ("[A] defendant not resident in the United States may be sued in any judicial district, and the joinder of such a defendant shall be disregarded in determining where the action may be brought with respect to other defendants."); *see also Richmond Techs., Inc. v. Aumtech Bus. Sols.*, No. 11-cv-02460-LHK, 2011 WL 2607158, at

24   *8 (N.D. Cal. July 1, 2011) (residence of foreign defendants "is typically disregarded for purposes of determining venue").

1    Defendant Eli Zhadanov is an individual residing in Brooklyn, New York, Dkt. No. 15 at 2, while

2    Defendant Interlink is a New Jersey corporation with its principal place of business in Linden,

3    New Jersey, Dkt. No. 1 at 4. Although no party is at home in this District, the Eastern District of

4    New York is home to two parties: Plaintiff Aqua Home Product and Defendant Zhanadov. Dkt.

5    No. 1 at 4; Dkt. No. 15 at 2. And while Interlink's home forum is New Jersey, Dkt. No. 1 at 4, it

6    obtained its license to the '850 Patent from Zhanadov, who is also the President of Interlink, Dkt.

7    No. 15 at 2.

8         Plaintiffs argue that the fact that they and Interlink maintain Amazon storefronts weighs in

9    favor of jurisdiction in this District, Dkt. No. 19 at 11, but nothing suggests that Amazon's Seattle

10   headquarters—as opposed to its other headquarters in Arlington, Virginia or its numerous

11   distribution facilities throughout the United States, *see* Dkt. Nos. 21-2, 21-3—effectuates sales of

12   the parties' products or is otherwise the subject of relevant actions by the parties. *See Werner v.*

13   *Dowlatsingh*, 818 F. App'x 671, 672 & n.1 (9th Cir. 2020) ("Uploading a video to YouTube—

14   which has its headquarters in San Bruno, California—is not an act expressly aimed at California

15   simply because the company is based in the state."); *BackGrid USA, Inc. v. Mod. Notoriety Inc.*,

16   No. CV2103318RSWLPDX, 2021 WL 4772474, at *6 (C.D. Cal. Sept. 15, 2021) ("Evidence that

17   Defendant . . . utilized the services of California-based internet companies to allegedly infringe

18   Plaintiff's copyrights does not establish express aiming at California."); *Brophy v. Almanzar*, 359

19   F. Supp. 3d 917, 924–25 (C.D. Cal. 2018) (defendants' use of ticket sale company Ticketmaster

20   and music streaming services such as iTunes and Google Play to sell an allegedly infringing song

21   did not constitute a satisfactory showing of personal jurisdiction in California where those

22   companies are located). And the fact that "Defendants leveraged Amazon's APEX Program . . . to

23   trigger takedown actions targeting Plaintiffs' [products]," Dkt. No. 19 at 11, is likewise not a

24   meaningful contact with this District. *See Doe v. Geller*, 533 F. Supp. 2d 996, 1009 (N.D. Cal.

2008) ("If plaintiff's theory of jurisdiction were upheld, then the Northern District of California could assert jurisdiction over every single takedown notice ever sent to YouTube or any other company in Silicon Valley."); *Republic of Kazakhstan v. Ketebaev*, No. 17-CV-00246-LHK, 2017 WL 6539897, at *8–9 (N.D. Cal. Dec. 21, 2017) ("[T]he fortuitous presence of . . . contacts with California-based technology companies that are not parties to the litigation are not enough to confer personal jurisdiction. . . . If such a theory of injury were permitted, than this Court would have jurisdiction over any case arising from any wrongful conduct on Gmail, Google, Facebook, Twitter, or YouTube, to name just a few of the technology companies headquartered in this district, whether or not those companies are parties to the dispute and whether or not the defendants in such cases have any other contacts to California." (citation modified)). Instead, like a "bank shot in basketball" in which a player "intends to hit the backboard" with the purpose of "putting the ball into the basket," *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1075 (10th Cir. 2008), Interlink sent a notice to Amazon with the ultimate purpose of canceling the Eastern District of New York-based and China-based Plaintiffs' sales; if anything, Interlink's actions are fairly characterized as directed at the Eastern District of New York and China. *See* Dkt. No. 21 at 2 (Zhadanov attesting that "Interlink knew the identities and locations of the plaintiffs when it sent them the proposed APEX agreement"; it "reviewed the plaintiffs' seller profiles on Amazon before informing Interlink's attorney . . . regarding the suspected infringement").

This factor weighs in favor of transfer to the Eastern District of New York.

5.  The contacts relating to the plaintiff's cause of action in the chosen forum

With respect to the contacts relating to Plaintiffs' noninfringement claim in this District, Plaintiffs again argue that the entire basis of their claims "arises from Defendants' initiation of Amazon's APEX Program, which is administered by and through Amazon's infrastructure located in Seattle, Washington—within this District." Dkt. No. 19 at 12. Defendants respond that

1    Plaintiffs' cause of action "has little relationship to" this District; "Plaintiffs' sales are nationwide,

2    as would be the effect of any judgment in this case." Dkt. No. 13 at 9. According to Defendants,

3    the cause of action is most closely tied to the Eastern District of New York: "this action might

4    impact Defendants' ability to enforce the '850 Patent, which emanates from their respective

5    locations in New York and New Jersey, and Plaintiffs' ability to offer the accused products for

6    sale, which in the case of the sole domestic defendant emanates from the Eastern District of New

7    York." Dkt. No. 13 at 9–10.

8          As the Court observed above, Plaintiffs' noninfringement claim has nothing to do with the

9    unexecuted APEX Agreement (including its forum selection clause) or the APEX Program. It

10   appears that Interlink and the Plaintiffs market and distribute their products nationwide,[5] and "the

11   sale of an accused product offered nationwide does not give rise to a substantial interest in any

12   single venue." *In re Hoffmann-La Roche Inc.*, 587 F.3d 1333, 1338 (Fed. Cir. 2009). Instead, "[i]n

13   patent cases, the location of the operative facts is where the allegedly infringing product was

14   designed and produced, or where some of the alleged consequential damage was done," *Par*

15   *Pharm., Inc. v. Fleming & Co., Pharms.*, No. 09CV0001-LAB (JMA), 2009 WL 10672226, at *3

16   (S.D. Cal. Sept. 18, 2009), or where the patent-in-suit "was designed, developed, and produced,"

17   *Int'l Controls & Measurements Corp. v. Honeywell Int'l, Inc.*, No. 5:12-CV-1766 LEK/ATB, 2013

18   WL 4805801, at *15 (N.D.N.Y. Sept. 9, 2013) (citation modified). As discussed above, the

19   gravitational center of the relevant activity in this case is in the Eastern District of New York,

20   where Plaintiff Aqua Home (a seller of allegedly infringing products) operates, Dkt. No. 1 at 4,

21   and where Zhadanov developed and designed the '850 Patent, Dkt. No. 15 at 3–4. This factor

22

23   _____

24   [5] Dkt. No. 13 at 9 (referring to the parties as "nationwide sellers of products on Amazon"); Dkt. No. 19 at 1 ("Plaintiffs are Amazon sellers who market and sell shower heads both through Amazon.com and their own independent websites.").

1    accordingly weighs in favor of transfer.

2        6.    The differences in the costs of litigation in the two forums

3        Defendants argue that the costs of litigation will be lower in the Eastern District of New

4    York because all parties "presently have counsel who are admitted to practice in the Eastern

5    District of New York and who are located within a close distance to the Eastern District courthouse

6    in Brooklyn," eliminating the need to "incur the expense of retaining separate local counsel in the

7    transferee forum" or "hav[e] their counsel travel to Washington for in-person appearances and the

8    trial." Dkt. No. 13 at 10. In addition, Defendants aver that trial in the Eastern District of New York

9    would be less costly due to the lower cost of transportation for both Defendants and Aqua Home.

10   *Id.* Plaintiffs respond that "[t]he convenience of the parties' counsel does not provide a relevant

11   factor in a transfer analysis," and "[t]ransferring this case to the Eastern District of New York . . .

12   would in fact shift the burden of travel and logistical expense onto Plaintiffs[.]" Dkt. No. 19 at 12.

13       Plaintiffs provide no support for their assertion that transferring the case would "shift the

14   burden" of travel and logistical expense to them. Even ignoring the undoubtedly lower cost in

15   counsel's travel and fees that would result from transferring the action to the Eastern District of

16   New York, Plaintiff Aqua Home and Defendant Zhadanov are located in the transferee district,

17   and Defendant Interlink is located approximately 20 miles from that courthouse, supporting

18   Defendants' contention that the costs of litigation to those parties will be lower in the Eastern

19   District of New York. Dkt. No. 14-2 at 2; Dkt. No. 14-7 at 2. Other Plaintiffs will have to travel

20   long distances regardless of which district presides over the case. *See Lyft, Inc. v. AGIS Software*

21   *Dev. LLC*, No. 21-CV-04653-BLF, 2022 WL 767616, at *4 (N.D. Cal. Mar. 14, 2022) (the location

22   of witnesses "who will be required to travel for a significant amount of time regardless of whether

23   or not the case is transferred" is accorded little weight in the transfer analysis) (collecting cases).

24   In addition, documents relating to the development of the '850 Patent are located in the Eastern

District of New York and in Manhattan, which is roughly "a twelve-minute drive" from the Eastern District courthouse. Dkt. No. 15 at 3–4. This too suggests that costs of litigation will be less expensive in the Eastern District of New York. Plaintiffs make no effort to explain how "travel and logistical expense" will be higher for them—and especially for Aqua Home—in Aqua Home's home district. This factor accordingly weighs in favor of transfer.

      7.   <u>The availability of compulsory process to compel attendance of unwilling non-party witnesses</u>

Courts give particular consideration to non-party witnesses, especially when they are not subject to subpoena power in the forum where the case is litigated. *See Lyft*, 2022 WL 767616, at *5; *Orange Cty. IBEW-NECA Labor Mgmt. Cooperation Comm. v. Pro Tech Eng'g Corp.*, No. 14–CV–04225–LHK, 2015 WL 5591113, at *2 (N. D Cal. Sep. 23, 2015). Third-party witnesses are only subject to a court's subpoena power when the court is (1) "within 100 miles of where the person resides, is employed, or regularly transacts business in person" or (2) "within the state where the person resides, is employed, or regularly transacts business in person" and "is commanded to attend a trial and would not incur substantial expense." Fed. R. Civ. P. 45(c)(1).

Plaintiffs argue that "[w]hat truly matters under this factor is the convenience and availability" of witnesses from Amazon, the "key third party." Dkt. No. 19 at 14. But again, this is a declaratory judgment action where the basis for Plaintiff's noninfringement claim is that "Plaintiffs' Accused Products do not meet, either literally or under the doctrine of equivalents, every element of the Asserted Claim of the '850 Patent." Dkt. No. 1 at 9. As Defendants point out, Plaintiffs "provide no explanation as to why Amazon would be required for trial of a matter relating to infringement or invalidity, or why Amazon would have any information relevant to the issues of infringement or validity in this case, much less such information that would not already be in the possession, custody, or control of the parties." Dkt. No. 20 at 9. Because the parties have not

1    identified any third party witnesses with information relevant to this case, this factor is

2    inapplicable.

3         8.    <u>The ease of access to sources of proof</u>

4         As Defendants note and Plaintiffs do not meaningfully contest, *see generally* Dkt. No. 19,

5    "[a]ll the domestic witnesses and documents related to the invention and enforcement of the '850

6    Patent are likely located either in or near the Eastern District of New York, and are thus within the

7    subpoena power of the Eastern District of New York." Dkt. No. 13 at 10. While Plaintiffs argue

8    that the "key documents and data relevant to this case are not located in New York or New Jersey,

9    but are instead maintained by Amazon," *id.* at 13–14, the Court again rejects their premise that

10   Defendants' use of the APEX program is relevant to the declaratory judgment claim. "In patent

11   infringement cases, the bulk of the relevant evidence usually comes from the accused infringer.

12   Consequently, the place where the defendant's documents are kept weighs in favor of transfer to

13   that location." *In re Apple Inc.*, 979 F.3d 1332, 1340 (Fed. Cir. 2020) (quoting *In re Genentech,*

14   *Inc.*, 566 F.3d 1338, 1345 (Fed. Cir. 2009)); *see also Microsoft Corp. v. TiVo Inc.*, No. C11-00134-

15   RSM, 2011 WL 1930640, at *4 (W.D. Wash. May 19, 2011) (same). The only location in the

16   United States where documents relative to the accused products may be stored is Aqua Home in

17   the Eastern District of New York; all other Plaintiffs are located abroad. *See Apple Inc. v. VoIP-*

18   *Pal.com, Inc.*, 506 F. Supp. 3d 947, 959 (N.D. Cal. Dec. 11, 2020) (finding it would be more

19   efficient for case to be heard in transferor district where "a significant amount of evidence relevant

20   to potentially infringing conduct is located . . . [and] where one of the Plaintiffs . . . is incorporated

21   and has its principal place of business"). Furthermore, the inventor of a patent-in-suit is "critical

22   to any validity analysis, claim construction, or eventual trial," *Nazomi Commc'ns, Inc. v. Nokia*

23   *Corp.*, No. SACV10151DOCRNBX, 2010 WL 11509140, at *3 (C.D. Cal. Oct. 12, 2010), and

24   here, the inventor resides in the Eastern District of New York and avers that much of the relevant

documentation is maintained in or near that district: "[t]he documents related to [his] development of the '850 Patent invention and the prosecution of the associated patent application are located at the offices of [his] attorneys at Fay Kaplun & Marcin [in lower Manhattan], at Interlink's offices [in New Jersey], or in [his] personal possession [in the Eastern District of New York]," Dkt. No. 15 at 2–4.

Most of the relevant evidence in this case is located in China or the Eastern District of New York, with none in this District. This factor accordingly favors transfer. *See In re Toa Techs., Inc.*, 543 F. App'x 1006, 1009 (Fed. Cir. 2013) (finding that this factor favored transfer where no party was headquartered in the original district "and the existence of physical sources of proof in the [transferee district] ma[de] that venue more convenient for trial"); *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1199–200 (Fed. Cir. 2009) ("Because most evidence resides in Washington or Japan with none in Texas, the district court erred in not weighing this factor heavily in favor of transfer.").

9. The relevant public policy of the forum state

The Eastern District of New York is home to two parties, Dkt. No. 1 at 4, while the Western District of Washington is home to none, *see generally id.* Furthermore, the district in which the accused infringer is headquartered has "a significant local interest in resolving [a] patent infringement dispute" because it is where the accused products are "maintained by individuals who continue to live and work in that community[.]" *In re FedEx Corp. Servs., Inc.*, No. 2022-156, 2022 WL 10887770, at *2 (Fed. Cir. Oct. 19, 2022). Because Aqua Home is headquartered in New York, that state has a significant local interest in resolving this infringement dispute. This factor thus favors transfer. *See, e.g.*, *InMode Ltd. v. BTL Indus., Inc.*, 756 F. Supp. 3d 809, 820 (C.D. Cal. 2024) (finding that this factor favored transfer where defendant accused of patent infringement was incorporated in a different state); *Proulx v. NRIP LLC*, No. CV-21-01211, 2021 WL 4894320, at *4 (D. Ariz. Oct. 20, 2021) (granting motion to transfer to the District of Nevada based, in part,

on the fact that both parties resided in Nevada and "Nevada has a significant interest in hearing and deciding disputes involving its residents").

### 10. Plaintiffs could have brought this action in the Eastern District of New York

#### (a) The Eastern District of New York Has Personal Jurisdiction Over Defendants

The issue of personal jurisdiction in a declaratory judgment action for non-infringement of a patent is governed by Federal Circuit law. *Silent Drive, Inc. v. Strong Indus., Inc.*, 326 F.3d 1194, 1201 (Fed. Cir. 2003). Courts engage in a two-step inquiry to analyze personal jurisdiction: (1) whether the state's long-arm statute extends to a defendant; and (2) whether the assertion of personal jurisdiction violates due process. *Deprenyl Animal Health, Inc. v. Univ. of Toronto Innovations Found.*, 297 F.3d 1343, 1348–50 (Fed. Cir. 2002). When the "determination of personal jurisdiction is based on affidavits and other written materials, and no jurisdictional hearing is conducted," the party asserting jurisdiction bears only a prima facie burden. *Celgard, LLC v. SK Innovation Co.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).

Under New York's long-arm statute, which is not coextensive with constitutional due process, *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 170 (2d Cir. 2013), "a court may exercise personal jurisdiction over any non-domiciliary" who, among other things, "transacts any business within the state or contracts anywhere to supply goods or services in the state[.]" N.Y. C.P.L.R. 302 (McKinney). The Eastern District of New York may exercise specific jurisdiction over Interlink because it transacted business in New York by obtaining the subject license from Zhadanov, Dkt. No. 15 at 2, and because it directed its enforcement efforts via the APEX program to New York by targeting Aqua Home (among other Plaintiffs) after discovering that Aqua Home was headquartered in the Eastern District of New York, Dkt. No. 13 at 6–7; Dkt. No. 21 at 2; *see also SnapPower v. Lighting Def. Grp.*, 100 F.4th 1371, 1375 (Fed. Cir. 2024) (holding that defendant purposefully directed enforcement activities to the state where defendant

1  was headquartered by initiating the APEX program; "[i]f [plaintiff] took no action, its listings

2  would be removed, which would necessarily affect sales and activities in [its home state]"); *Sik*

3  *Gaek, Inc. v. Yogi's Two, Inc.*, No. 14-CV-6053 (ARR)(PK), 2018 WL 4845832, at *5 (E.D.N.Y.

4  Sept. 7, 2018) (holding that Defendants "avail[ed] [them]sel[ves] of the benefits of conducting

5  business" in New York when they "engaged in substantial business transactions within the state,

6  such as negotiating and signing the licensing agreement"), *report and recommendation adopted,*

7  No. 14-CV-6053 (ARR), 2018 WL 4845735 (E.D.N.Y. Oct. 4, 2018); *JetBlue Airways Corp. V.*

8  *Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 394 (E.D.N.Y. 2013) (holding that the

9  exercise of personal jurisdiction over defendant under N.Y. C.P.L.R. 301 was warranted because

10  defendant entered licensing agreements with companies in New York "and deriv[ed] substantial

11  revenue benefit from, them").

12      It would not "offend traditional notions of fair play and substantial justice" for the Eastern

13  District of New York to exercise personal jurisdiction over Interlink. *Asahi Metal Indus. Co. v.*

14  *Superior Court of Cal.*, 480 U.S. 102, 113 (1987) (citation modified). As described above, Interlink

15  "purposefully directed" its activities at residents of the forum (Aqua Home and Zhadanov);

16  Plaintiffs' claim "arises out of or relates to" those activities; and exercising personal jurisdiction

17  in the Eastern District of New York would be "reasonable and fair." *Xilinx, Inc. v. Papst Licensing*

18  *GmbH & Co. KG*, 848 F.3d 1346, 1353 (Fed. Cir. 2017); *see also Licci*, 732 F.3d at 170 ("[D]espite

19  the fact that section 302(a)(1) of New York's long-arm statute and constitutional due process are

20  not coextensive, and that personal jurisdiction permitted under the long-arm statute may

21  theoretically be prohibited under due process analysis, we would expect such cases to be rare.").

22      Defendant Zhadanov is subject to general jurisdiction in New York because he resides in

23  Brooklyn. *See Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 622 n.1 (2d Cir. 2016) ("A state

24  has [ ] general jurisdiction over its residents[.]").

ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER - 14

*(b) Venue is Proper in the Eastern District of New York*

Under Section 1391(b), "venue is proper in the district where all defendants reside or in which the claim arose." *United States Aluminum Corp. v. Kawneer Co.*, 694 F.2d 193, 195 (9th Cir. 1982). For purposes of Section 1391, a corporate defendant is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question[.]" 28 U.S.C. § 1391(c)(2). For the reasons stated above, venue in the Eastern District of New York is proper against Defendants because they either reside, or are deemed to reside, there.

### III.   CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to transfer this case to the Eastern District of New York and DENIES as moot their alternative request to dismiss. Dkt. No. 13; *see also In re Nintendo Co., Ltd.*, 589 F.3d at 1198 ("[I]n a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."). The Court directs the Clerk to transfer this matter to the United States District Court for the Eastern District of New York and to close this matter.

Dated this 21st day of October, 2025.

Lauren King
United States District Judge

ORDER GRANTING DEFENDANTS' MOTION TO TRANSFER - 15